Preciliano **CARMONA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 3–93–061–CR.

Court of Appeals of Texas, Austin.

July 6, 1994.

Keith S. Hampton, Austin, for appellant.

Ken Anderson, Dist. Atty., John M. Bradley, Asst. Dist. Atty., Georgetown, for appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Preciliano Carmona appeals his conviction for aggravated sexual assault and indecency with a ten year old child. Act of May 25, 1981, 67th Leg., R.S., ch. 202, § 21.11(a)(1), 1981 Tex.Gen.Laws 471, 472 (Tex.Penal Code Ann. § 21.11(a)(1), since amended); Act of June 19, 1983, 68th Leg., R.S., ch. 977, § 22.-021, 1983 Tex.Gen.Laws 5311, 5315 (Tex.Penal Code Ann. § 22.021, since amended). The jury assessed punishment at confinement for sixty years and a fine of $7,000 for three counts of aggravated sexual assault and confinement for twenty years and a fine of $3,000 for one count of indecency with a child. The sentences are to run concurrently. Appellant raises six points of error com-

plaining that (1) he was denied due course of law under the Texas and United States Constitutions because the State failed to preserve potentially exculpatory evidence by not subjecting the complainant to a medical examination; (2) the trial court erred in permitting the prosecution to introduce admissions appellant made to a private polygraph operator; (3) he was denied his confrontation rights under the Texas and United States Constitutions because the complainant was accompanied at the witness stand by her older sister; (4) the trial court erred in not allowing appellant to cross-examine the polygraph operator about his occupation, the circumstances in which the polygraph operator heard appellant's admissions, and the results of the polygraph examination; and (5) he received ineffective assistance of counsel. We will affirm the conviction.

## BACKGROUND

On August 4, 1985, a ten year old female child made an outcry statement to Taylor Police Officer Mark Clark that appellant, her stepfather, had been sexually abusing her at home and that her thirteen year old brother Joe walked in and witnessed the abuse. Joe testified that he saw appellant kneeling in front of the complainant, who was seated on a sofa chair with her legs in the air, her nightgown lifted and her underwear in appellant's hand. The siblings fled the home on Joe's bicycle, met their mother, who had been visiting a nearby relative, and returned with her to their home. The complainant's mother confronted appellant who immediately fled the home. The complainant's mother testified that approximately three weeks later appellant called her and threatened to hurt a family member if they did not drop the charges filed against him. During the conversation, appellant said he assaulted the child because her mother did not take care of her. The complainant's sister testified that she overheard the telephone conversation from a separate receiver. Appellant was not arrested for eight years. Appellant returned to Taylor to attend his son's funeral when another son, a police officer, reminded his father of the charges pending against him. On June 16, 1992, appellant turned himself in to the police.

At trial, the complainant told the jury that appellant began sexually abusing her when she was eight years old, after he moved in with her mother. The complainant testified that the abuse started in the summer of 1983, when appellant came into her bathroom while she was bathing and began touching her breasts and vagina. Similar conduct continued in her mother's bedroom and in the living room. The complainant testified that in December 1983, the sexual abuse escalated; appellant started putting his penis in her anus. The complainant testified that this caused her pain and bleeding, and that on one occasion she wiped semen from her anus when she later went to the bathroom. Appellant would also touch the complainant's genitals with his penis, and would put his fingers in the complainant's vagina while she held his penis. The complainant said that she did not report the abuse because appellant threatened to hurt her mother or someone else if she reported anything. She testified that appellant gave her a jacket, money, and a bathing suit for letting him sexually abuse her.

At trial, appellant denied committing the sexual contact and making verbal threats. Appellant explained that on August 4, 1985, he was holding a beer in one hand and a cup in the other when the complainant and her brother suddenly left the house. Appellant stated that his wife did not confront him about the offenses, but that he left the house because they had an argument.

Mike Barton, a private polygraph operator hired by appellant, testified that appellant had admitted numerous acts of sexual abuse involving the complainant during an interview conducted immediately before the polygraph examination. Appellant explained to Barton that the complainant's brother unexpectedly entered the room just as the complainant lifted her nightgown and requested money.

## FAILURE TO ORDER MEDICAL EXAMINATION

Appellant asserts in his first and second points of error that the State's failure to preserve potentially exculpatory evidence by

not subjecting the complainant to a medical examination denied him due course of law as guaranteed by Article I, section 19 of the Texas Constitution and the Sixth Amendment to the United States Constitution. Appellant contends that a medical examination might have revealed no evidence of vaginal or anal penetration, and that being denied the possibility of discovering such evidence constituted a violation of due process and due course of law.

The record does not show, however, that appellant ever complained in the trial court of a violation of his rights under the Texas Constitution. Neither does appellant's brief cite to evidence in the record that such a claim was made. Accordingly, appellant has failed to preserve his first point of error. Tex.R.App.P. 52(a); 74(d), (f).

▬ Appellant did properly raise the complaint that failure to preserve potentially exculpatory evidence violated the United States Constitution and, in the event appellant did properly raise this complaint under the Texas Constitution, we note that this Court has not interpreted Article I, section 19 of the Texas Constitution more expansively than the United States Constitution. *See Davis v. State,* 831 S.W.2d 426 (Tex.App.— Austin 1992, pet. ref'd); *Saldana v. State,* 783 S.W.2d 22 (Tex.App.—Austin 1990, no pet.). This Court considers three factors relevant when determining whether the failure to preserve evidence constitutes a federal due process violation: (1) the likelihood that the lost evidence resulted in a violation of due process; (2) the likelihood that the defendant was significantly prejudiced at trial by the absence of the evidence; and (3) the level of governmental culpability. *Gardner v. State,* 745 S.W.2d 955, 958–59 (Tex.App.— Austin 1988, no pet.). The State has no duty to discover evidence that exonerates the accused, only to preserve evidence possessing

an exculpatory value. There can be no violation of this duty if the criminal defendant was able to obtain comparable evidence by other reasonably available means. *California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 2533–34, 81 L.Ed.2d 413 (1984). To prove the State violated its duty, and thereby denied the defendant due process, a criminal defendant must establish that the State acted in bad faith when it failed to preserve the potentially exonerating evidence. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281 (1988); *Saldana v. State,* 783 S.W.2d 22, 23 (Tex.App.—Austin 1990, no pet.).[1] Further, the criminal defendant must also establish that the evidence would have been both material and favorable to his defense. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 873, 102 S.Ct. 3440, 3449–50, 73 L.Ed.2d 1193 (1982).[2]

▬ Appellant has not established that a medical examination of the complainant would have been of exculpatory value. The only evidence in the record is the testimony of Lynn Lefevre, an investigator for Children's Protective Services at the time of the incident, who stated that most physical examinations in sexual abuse cases do not establish evidence of sexual assault even when abuse has occurred. Lefevre also testified that, because of the limited time she spent with the complainant and the child's reluctance to reveal the details of sexual abuse, Lefevre was unaware of any allegation that appellant had penetrated the complainant's anus with his penis. Not only did appellant fail to address the apparent exculpatory value of the evidence, he also failed to address the possibility that the same potentially exonerating evidence could not be obtained by other means. If appellant had not fled for eight years, he could have made a timely request for a medical examination of the victim.

---

1. The Texas Court of Criminal Appeals has not decided a case involving the bad faith requirement established by the United States Supreme Court in *Youngblood.* However, in *Thomas v. State,* a murder case involving police suppression of evidence exculpatory on its face, the court in dicta interpreted *Youngblood* to require a criminal defendant to show bad faith on the part of the State in failing to preserve potentially useful

evidence. *Thomas v. State,* 841 S.W.2d 399, 402 n. 5 (Tex.Crim.App.1992).

2. *Valenzuela–Bernal* is a compulsory attendance of a witness case; however, this Court has stated that due process analysis is essentially the same as compulsory process analysis. *Saldana,* 783 S.W.2d at 23 n. 1.

Even assuming the potential evidence was exculpatory on its face, and no other means of acquiring such evidence was available, appellant fails to convince this Court that the State acted in bad faith. Appellant argues that a police decision not to conduct a medical examination of a sexual abuse victim because the results might do nothing to advance the prosecution's case constitutes bad faith. We disagree.

The record clearly establishes that the State did not act in bad faith by not requesting a medical examination of the victim. Lefevre testified that she considered several factors: (1) limited financial resources; (2) limited availability of doctors specialized in this area; (3) the fact that the complainant's brother witnessed the abuse; (4) the potential additional trauma the examination would inflict on the child; (5) the fact that most examinations do not reveal any evidence of abuse even when abuse has occurred; and (6) her lack of knowledge of allegations that appellant had penetrated the complainant's anus with his penis. We conclude that the State's failure to order a medical examination of the young child did not violate appellant's due process rights. We overrule the second point of error.

### RIGHT OF CONFRONTATION

Appellant asserts in his fourth point of error that the trial court committed reversible error by permitting the complainant's older sister to accompany her on the witness stand and by allowing the older sister to hold the complainant's hand while she testified against the man who sexually assaulted her as a child. It is appellant's position that this accommodation of the witness violated his constitutional right to confront a witness testifying against him. U.S. Const. amend. VI; U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 10. We disagree.

In *Maryland v. Craig*, the United States Supreme Court held that the Confrontation Clause does not prohibit a state from using a one-way closed circuit television procedure for the delivery of testimony by a child witness in a child abuse case. *Maryland v. Craig*, 497 U.S. 836, 860, 110 S.Ct. 3157, 3171, 111 L.Ed.2d 666 (1990). The

Court stated that the Confrontation Clause is primarily concerned with ensuring "the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Id.* at 845, 110 S.Ct. at 3163. The Confrontation Clause requires (1) a personal examination of the witness in the presence of the accused; (2) that the witness testify under oath; (3) that the witness be subject to cross-examination; and (4) that the jury observe the demeanor of the witness. *Id.* at 845–46, 110 S.Ct. at 3163–64. However, these elements are not self-sufficient. As the Court stated, it is "[t]he combined effect of these elements of confrontation ... [that] serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings." *Id.* at 846, 110 S.Ct. at 3163. The Court determined that the right to face-to-face confrontation "is not the sine qua non of the confrontation right." *Id.* at 847, 110 S.Ct. at 3164. Accordingly, the Court permitted modification of the face-to-face element of the confrontation right in light of the State's showing of necessity and the important state interest of protecting children who are victims of child abuse from the trauma of testifying. *Id.* at 855, 110 S.Ct. at 3168–69.

The Court reasoned that the showing of "necessity" must be made on a case-by-case basis and requires that the trial court hear evidence to determine: (1) whether the accommodation sought is necessary to protect the welfare of the particular child who seeks to testify; (2) if so, that the child would not be traumatized by the courtroom generally, but by the presence of the defendant; and (3) that the witness' trauma is more than de minimis. *Id.* at 855–56, 110 S.Ct. at 3168–69 (citations omitted); *see Gonzales v. State*, 818 S.W.2d 756, 762 (Tex.Crim.App.1991), *cert. denied,* — U.S. —, 113 S.Ct. 1334, 122 L.Ed.2d 718 (1992); *Hightower v. State*, 822 S.W.2d 48, 51 (Tex.Crim.App.1991). The *Craig* Court observed that, to the extent a finding of necessity is established on remand, the Confrontation Clause was not violated

because the child testified under oath, was subject to full cross-examination, and was observed by the judge, jury, and defendant. *Craig,* 497 U.S. at 857, 110 S.Ct. at 3169–70.

In *Gonzales,* the Texas Court of Criminal Appeals followed *Craig* to hold that a child who has been a victim of child abuse may testify via closed-circuit television without violating the defendant's confrontation rights under the United States or Texas Constitutions. *Gonzales,* 818 S.W.2d at 756. The court retreated from its earlier suggestion that the Texas Constitution might afford greater confrontational rights than those afforded by the United States Constitution, *Id.* at 762–63 (discussing *Long v. State,* 742 S.W.2d 302, 309 n. 9 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988), *overruled by Briggs v. State,* 789 S.W.2d 918 (Tex.Crim.App.1990)), and held that Article I, section 10 of the Texas Constitution is to be interpreted in accordance with the Sixth Amendment to the United States Constitution. *Gonzales,* 818 S.W.2d at 763 n. 12.

 Applying the *Craig* analysis to this case requires a two-step inquiry. This Court must determine: (1) whether an important state interest exists, and (2) whether the procedural modification used in this trial was necessary to further that interest. Addressing the first issue, we recognize that the *Craig* analysis has been applied only to protect a child victim of sexual abuse from the trauma of testifying against the accused. *See Gonzales,* 818 S.W.2d at 764–66; *Hightower,* 822 S.W.2d at 51. In the present case, the witness was eighteen at the time she testified, but the sexual assaults occurred when she was eight to ten years old. The complainant's age at the time of the abuse is important, as is her assailant's role in the family. As the complainant's stepfather, appellant occupied a position of authority that permitted him to threaten harm to the child victim and to other family members. The trial court could well have determined that at the age of eighteen the victim still carried with her the fear and trauma of the early abuse and needed some procedural modification to lessen the trauma of confronting the defendant in the courtroom. The complain-

ant testified that it hurt her to talk about the abuse at trial as much as it did immediately after it was discovered in 1985. We decline to hold that the eight year delay from the time appellant sexually abused his ten year old stepdaughter to the time of trial diminishes the State's important interest in protecting this witness from the trauma of testifying. We note that appellant's flight, which occasioned this delay, also deprived the complainant of an opportunity to confront her childhood assailant in the normal maturation process.

In *Gonzales,* the trial court allowed a child witness in a murder case to testify via closed circuit television when the witness was also the victim in a sexual assault case pending against the defendant in another district court. The court of criminal appeals found an important state interest in protecting a child victim of sexual assault from the trauma of testifying against her abuser in a trial other than the sexual abuse case. *Gonzales,* 818 S.W.2d at 756. Today we recognize that the important state interest of protecting a witness who was the victim of sexual abuse during childhood from the trauma of testifying against her assailant, who was also her stepfather, extends until the time of the trial of the sexual offense even though the victim is then eighteen years old.

To protect appellant's confrontation rights, however, the trial court must also consider the second half of the *Craig* analysis and determine whether the procedural modification is necessary. The record reflects that the trial judge made such a determination. First, the record demonstrates that the complainant experienced a great deal of trauma and emotional distress when talking about the events, and that it was her sister's presence that calmed the complainant, enabling her to tell the truth about the embarrassing and humiliating events.

Second, the record reflects that it was appellant's presence, not the courtroom generally, that traumatized the complainant. The prosecution stated that the complainant was fearful because of appellant's threats to harm her family if she talked about his sexual abuse, and that her sister's presence helped to alleviate her fear. In *Gonzales,* a

member of the Family Violence Unit of the District Attorney's Office was allowed to sit silently beside the victim. *Gonzales*, 818 S.W.2d at 760 n. 6.

In *Craig*, the Supreme Court did not define de minimis trauma. They ruled that Maryland's prerequisite of a finding that the child would suffer serious emotional distress such that she could not reasonably communicate "clearly suffices to meet constitutional standards." *Craig*, 497 U.S. at 856, 110 S.Ct. at 3169. Nor has the Texas Court of Criminal Appeals established a precise standard. In *Hightower*, the court concluded that a trial court's finding that "[t]he emotional distress suffered by the child witness in the presence of the defendant would have been more than mere nervousness or a reluctance to testify" satisfied the de minimis standard. *Hightower*, 822 S.W.2d at 52. We conclude that the record references establishing the first two inquiries of the second part of the *Craig* analysis also satisfy the de minimis inquiry in this case.

We note that the witness was in the same room as appellant so that a face-to-face encounter occurred, that the witness testified under oath, that the judge and jury observed the demeanor of the witness, and that the witness was subject to cross-examination. The procedural modification in this case encroached on appellant's confrontation rights less severely than would testimony from another room via closed circuit television. Applying the *Craig* analysis to the facts of this case, we conclude that appellant's right of confrontation was not violated. Consequently, we overrule the fourth point of error.

## EVIDENCE FROM THE POLYGRAPH EXAMINATION

■ Appellant raises two points of error regarding the testimony of Mike Barton, a private polygraph examiner. In his third point of error appellant asserts that the trial

court erred in allowing the prosecution to introduce admissions appellant made to Barton during the polygraph examination. The admissions were introduced to impeach appellant's testimony on cross-examination. Appellant objected to the introduction of the confessions on the ground that the polygraph examiner was an agent of defense counsel and the communication was therefore protected by the attorney-client privilege.

In order for appellant to claim the protection of the attorney-client privilege, his communication with Barton must have been intended to be confidential at the time it was made, and the privilege must not have been waived by a voluntary disclosure of his statements to a third party. Tex.R.Crim.Evid. 503; 511. Whether or not the polygraph proceedings were intended to be confidential, however, the attorney-client privilege was waived when appellant's counsel disclosed a significant portion of the communication to the district attorney's office and the Taylor Police Department. *Fuller v. State*, 835 S.W.2d 768, 771 (Tex.App.—Eastland 1992, pet. ref'd).[3] Appellant asserts there was no waiver because the disclosure was made in furtherance of the rendition of professional legal services. Appellant misconstrues the purpose of this section of Rule 503(a)(5), which was intended to protect disclosures made to third persons such as spouses, parents, business associates, or joint clients, but not disclosures to parties with an interest adverse to the party claiming the privilege. 1 Steven Goode, Olin G. Wellborn III & M. Michael Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 503.5, 348 (Texas Practice 2d ed.1993) [hereinafter Goode].

Appellant contends that even if the attorney-client privilege was waived as to the polygraph report, it was not waived as to the polygraph examiner's notes, which contained appellant's admissions of prior sexual experi-

---

**3.** *Fuller* also holds that when a fact issue is raised as to waiver of a privilege, the party claiming the privilege has the burden of disproving the waiver or establishing the limited scope of the waiver. *Fuller*, 835 S.W.2d at 769. This is in contrast with the holdings of the Texas Court of Criminal Appeals. *See Burnett v. State*, 642 S.W.2d 765, 770–71 (Tex.Crim.App.1982);

*Cruz v. State*, 586 S.W.2d 861, 865 (Tex.Crim. App.1979). Accordingly, we cite *Fuller* for the proposition that voluntary disclosure of information subject to the protection of the attorney-client privilege to the prosecution or police waives that privilege, and we observe that the record reflects the State met its burden of establishing the waiver.

ences with the complainant. Rule 511 provides that the attorney-client privilege is waived if the "holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. . . ." Appellant's disclosure of the favorable portion of the conversation with the polygraph operator waived the attorney-client privilege as to the entire matter. Rule 102 states that the Texas Rules of Criminal Evidence "shall be construed to secure fairness in administration . . . of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Fairness requires that appellant not be permitted to use the attorney-client shield as a sword through selective disclosure. *See* Goode, § 522.2, 478.

■ Finally, appellant argues that the work-product doctrine protected the polygraph operator's notes. The record does not show, however, that appellant ever raised the work product doctrine at trial. Neither does appellant's brief cite to evidence in the record that shows where such a claim was made. Accordingly, appellant has not preserved this matter for appeal. Tex.R.App.P. 52(a); 74(d), (f). Having considered the other arguments raised, we overrule the third point of error.

■ In his fifth point of error appellant asserts that the trial court erred in prohibiting him from cross-examining Mike Barton about his profession, the circumstances of the conversation during which appellant made the admissions later used to impeach him, and the results of the polygraph examination. In his brief, appellant argues that not allowing cross-examination on these topics violated his federal and state confrontation rights, and Rules 106, 107, and 608 of the Texas Rules of Criminal Evidence. The record does not show, however, that appellant ever made any objection to the exclusion of references to Mike Barton's profession, the circumstances of his conversation with appellant, or the results of the polygraph examination. Neither does appellant's brief cite to evidence in the record showing these arguments were made. Conversely, the record indicates that appellant expressly waived his right to cross-examine Mike Barton. The

fifth point of error is overruled. Tex. R.App.P. 52(a); 74(d), (f).

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his sixth point of error, appellant contends that he did not receive effective assistance from his trial counsel because counsel (1) failed to object and seek a hearing pursuant to Article 38.072 of the Texas Code of Criminal Procedure before the designated outcry witness testified; (2) failed to object to the introduction of allegedly extraneous bad acts; (3) failed to cross-examine a witness; (4) disclosed allegedly confidential communications; and (5) failed to object under Rule 410 of the Texas Rules of Criminal Evidence to the admission of evidence obtained during plea negotiations.

■ A convicted defendant who claims that counsel's assistance was so defective as to require reversal of conviction must show: (1) counsel made errors so serious that defendant was functionally deprived of the "counsel" guaranteed by the Sixth Amendment; and (2) but for trial counsel's alleged unprofessional errors, there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that rendered the result unreliable. *Id.* The *Strickland* analysis has been adopted by Texas courts in reviewing an ineffective assistance of counsel claim under the Texas Constitution. *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim.App.1986); *see O'Hara v. State,* 837 S.W.2d 139 (Tex. App.—Austin 1992, no pet.).

Appellant must overcome a strong presumption that counsel's conduct resulted from sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. A court deciding an ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 690, 104 S.Ct. at 2066. The burden of proving by a preponderance of the evidence

ineffective assistance of counsel rests upon the convicted defendant. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985); *Haynes v. State,* 790 S.W.2d 824, 827 (Tex. App.—Austin 1990, no pet.).

■ Addressing the specific allegations of deficient representation, we hold that appellant received effective assistance of counsel. First, appellant contends that trial counsel was deficient in not seeking a hearing to establish if Officer Clark was the proper outcry witness before he testified. Mark Clark was a police officer to whom the complainant made an outcry statement of her sexual abuse. After Officer Clark testified, the trial court, sua sponte, held a hearing outside the presence of the jury pursuant to Article 38.072, section 2(b)(2) of the Texas Code of Criminal Procedure.[4] The record reflects that the trial court properly admitted the outcry testimony of Officer Clark. The trial court determined that appellant was given timely notice of the prosecution's intent to call Officer Clark as an outcry witness, that Officer Clark was the proper outcry witness, and that the complainant was available to testify. The failure to object does not establish ineffective assistance of counsel if no proper objection could have been made. *Hunnicutt v. State,* 531 S.W.2d 618, 624 (Tex. Crim.App.1976).

■ Second, appellant asserts that trial counsel was deficient in allowing the introduction of extraneous bad acts. Specifically, appellant complains that trial counsel (1) elicited from the victim's brother testimony that appellant had beaten his wife; (2) failed to object on other grounds after the trial court overruled a hearsay objection to the testimony of the complainant's mother and sister that appellant had threatened to harm someone in the family if the charges were not dropped; and (3) opened the door for prior admissions by asking appellant if anything of a sexual nature had ever occurred between him and the complainant. Clearly, appellant's history of beating his wife and of threatening to retaliate if the incidents of

sexual abuse were reported were relevant to explain why the complainant delayed reporting appellant's sexual abuse. Appellant's trial counsel may have elicited testimony of spousal abuse before the prosecution could, in order to limit its damaging effect. Trial counsel may have thought the jury would believe appellant rather than other witnesses. As to opening the door for appellant's prior admissions to the polygraph operator, the record establishes that Mike Barton did not testify about extraneous offenses. He only testified about the sexual abuse alleged in the indictment. There is no evidence in the record to suggest that Barton testified about acts other than those for which appellant was on trial.

■ Third, appellant asserts that counsel was deficient for failing to cross-examine Mike Barton. There is no question that Mike Barton's testimony was damaging. Complete absence of cross-examination may be a legitimate strategy if a cross-examination would only serve to reinforce the prosecution's theory. *See Miniel v. State,* 831 S.W.2d 310, 323–24 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992).

■ Fourth, appellant claims that it was deficient representation for appellant's trial counsel to disclose attorney-client confidences by giving a copy of the polygraph report to the prosecution. The record establishes that appellant's trial counsel often submitted the results of his client's polygraph tests in an attempt to have prosecutors drop the case, and that this defensive strategy had been effective in other cases.

Finally, appellant urges that his trial counsel was deficient for failing to object to the prosecution's introduction of the admissions appellant made to the polygraph operator under Rule 410 of the Texas Rules of Criminal Evidence. Rule 410 provides that statements made during the course of plea discussions which do not result in a plea of guilty or nolo contendere are not admissible against

---

**4.** Article 38.072 of the Texas Code of Criminal Procedure outlines the requirements for the introduction of outcry statements made by child victims of sexual abuse; the statements that

might otherwise be inadmissible hearsay. *See* Tex.Code Crim.Proc.Ann. § 38.072 (West Supp. 1993).

a defendant. The failure to object is not ineffective assistance of counsel if there was no proper objection available. *Hunnicutt,* 531 S.W.2d at 618. Appellant never entered into a plea discussion. He voluntarily gave the police and the prosecution the results of the polygraph examination to convince them that he did not commit the crimes. The fact that appellant hoped to receive some benefit from disclosing the report does not mean that negotiations took place.

Appellant has failed to show that his trial counsel was ineffective when all of the facts and circumstances are considered. The totality of trial counsel's representation was well above the minimum constitutional standard required by *Strickland* and *Hernandez.* We overrule the sixth point of error.

## CONCLUSION

Finding no error we affirm the judgment of conviction.