Jerry **EASTER**, Relator,

v.

Honorable **Frank G. McDONALD**, Judge Presiding, 74TH District Court, McLennan County, Texas, Respondent.

No. 10–95–051–CV.

Court of Appeals of Texas, Waco.

Aug. 2, 1995.

Bruce Burleson, Jones, Burleson, Cunningham & Rayl, L.C., Temple, and M.V. Dunnam, Jr., Dunnam & Dunnam, Waco, for defendant/relator.

Michael Scanes, Naman, Howell, Smith & Lee, Waco, and Ross S. Crossland, Thornton, Summers, Biechlin, Dunham & Brown, L.C., Austin, for defendant/Cecelia Easter.

John Robert King & M. Steven Deck, Law Office of John King, McAllen, for real parties in interest/plaintiff/Stanley Turner, as Next Friend of Amy Turner.

Mark Ramsey, Ramsey & Murray, P.C., Houston, for intervenor/Germania Ins. Companies

David Deaderick, Tulk & Deaderick, San Antonio, for defendant/John Wise, Ph.D.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

On May 11, 1994, in cause number 10–94–047–CV, we conditionally issued a writ of mandamus sought by Jerry Easter, Relator, against Honorable Frank G. McDonald, Respondent, who is sitting as the judge of the 74th District Court. *See Easter v. McDonald,* 877 S.W.2d 77, 80 (Tex.App.—Waco 1994, orig. proceeding). We ordered Respondent to modify an order by which Dr. John Wise, Ph.D., was required to turn over to Stanley Turner as Next Friend of Amy A. Turner, the Real Party in Interest, records made by Dr. Wise during the course of professional services rendered by him to Relator. Easter's claim was based on the privilege in Rule 510 of the Rules of Civil Evidence. *See* Tex.R.Civ.Evid. 510(b), (c). The Supreme Court of Texas, without addressing the merits of the petition, ordered us to vacate our opinion and order and suggested that Respondent reconsider his ruling in light of its decision in *R.K. v. Ramirez,* 887 S.W.2d 836 (Tex.1994) (orig. proceeding). *See McDonald v. Tenth Court of Appeals,* 886 S.W.2d 955 (Tex.1994) (orig. proceeding). On reconsideration, Respondent first upheld

Easter's claim of privilege but, after Turner requested a reconsideration, reversed himself and ordered that Easter's records be produced by Dr. Wise. Easter again asks that we order Respondent to set aside the ruling. We decline.

## THE SUIT

Stanley Turner and Cecelia Easter were married from 1971 until 1984. They are the natural parents of Amy, Tia, Scott, and Bryan. Cecelia and Easter were married from 1985 until 1987. Turner claims that, during that marriage, Easter sexually assaulted Amy. Easter was professionally counselled by Wise, who also counselled Cecelia and Amy. Easter and Cecelia remarried in 1988, and Turner alleges that the assaults on Amy continued after Easter counselled with Wise and after Cecelia and Easter remarried.

Turner, on behalf of Amy, who is still a minor, brought suit in the 74th District Court against Easter for the assaults, also alleging negligence, gross negligence, intentional infliction of emotional distress, and negligent invasion of privacy; against Cecelia alleging negligence, gross negligence, fraud, intentional infliction of emotional distress, and negligent invasion of privacy; and against Wise alleging professional negligence, gross negligence, fraud, and intentional infliction of emotional distress. He seeks $21,700,000 in actual damages and $25,000,000 in punitive damages.

## THE DISCOVERY DISPUTE

Turner sent a request for production to Wise and Easter requesting all documents that relate to the treatment of Easter. *See* TEX.R.CIV.P. 167. Wise objected to the request on the grounds that his records contain confidential mental health information that is privileged under Rule 510 of the Rules of Civil Evidence. *See* TEX.R.CIV.EVID. 510(b), (c). Easter asserted his right against self-incrimination. Turner then sought an order compelling production of the disputed records. After a hearing on January 6, 1994, Respondent, on February 4, signed an order generally sustaining Easter's self-incrimination objection. The order also stated that

Easter must provide copies of the documents in compliance with the discovery rules before *he* could use them at trial in support of any defense he might offer. On March 16, however, Respondent signed an order that overruled Wise's objections under the civil evidence rules and ordered that Wise produce his records with regard to Easter within thirty days. The second order further determined that Wise's records relating to Amy are discoverable, that his records relating to Cecelia are not discoverable, and that any reference to Cecelia in Easter's records or in Amy's records should be deleted.

As shown above, the matter was again before the court this year. The discovery requests and objections remained the same and Easter requested an *in-camera* inspection of the records. By letter dated January 27, 1995, after the *in-camera* inspection, Respondent sustained Easter's objection. On February 6, Turner amended his petition and requested a reconsideration of the ruling. On February 22, Respondent signed an order that allowed discovery of Wise's patient records and billing records relating to Easter and Amy and further provided that references to Cecelia in both sets of records should be deleted. Easter then filed a second petition for writ of mandamus.

## STANDARDS OF REVIEW

Our review is governed by the applicable standards of review for original proceedings seeking writs of mandamus and, in this instance, the interpretation given Rule 510 of the Rules of Civil Evidence by our Supreme Court.

### MANDAMUS

 A writ of mandamus may be issued to correct a "clear abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). Issuance of writs of mandamus is limited to those instances in which no adequate remedy by appeal exists. *Id.* at 840. A court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* at 839.

 With respect to the resolution of factual issues or matters committed to the

trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Id.* The relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 840. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.*

■ Review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* A trial court has no "discretion" in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Id.*

### RULE 510

■ Rule 510 provides for confidentiality of mental health information and sets out various exceptions. Communications between a professional and a patient "shall not be disclosed." *Id.* 510(a)(1), (2), (b)(1). Records of the identity, diagnosis, evaluation, or treatment of a patient "shall not be disclosed." *Id.* 510(b)(2). The privilege of confidentiality may be claimed by the patient, a representative of the patient, or by the professional, whose authority to do so is presumed. *Id.* 510(c). The Rule provides for exceptions to non-disclosure, including those communications and records "relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense." *Id.* 510(d)(5). In *R.K.*, the Supreme Court observed that the 1988 amendments to Rule 510 "represent a significant departure from the historical scope of the patient-litigant exception." *R.K.*, 887 S.W.2d at 842. The exception now terminates the confidentiality privilege whenever any party relies on the condition of a patient as part of that party's claim or defense, even when the patient does not personally place the condition at issue or is not a party to the suit. *Id.*

■ This exception to the privilege applies when the records are relevant to a patient's condition that "relates in a signifi-

cant way to a party's claim or defense" but not when the condition is tangential or "merely an evidentiary or intermediate issue of fact." *Id.* In other words, some legal consequence must flow from the existence or non-existence of the condition. *Id.* at 843. Generally, the inquiry will be whether the factfinder must make a determination concerning the issue itself, *i.e.*, whether it is an "ultimate issue for a claim or defense." *Id.* at 842–43. Courts should assure that the records sought are closely related in time and scope to the claims made. *Id.* at 843. Thus, "access to medical and mental health information will be afforded the non-patient party only if the patient's condition itself is a fact that carries legal significance and only to the extent necessary to satisfy the discovery needs of the requesting party." *Id.*

### APPLICATION OF THE RULE

At the hearing, Wise testified that Easter, Cecelia, and Amy were his "patients" as the term is defined in Rule 510. *See* TEX.R.CIV. EVID. 510(a)(2). He further testified that he prepared records about Easter that contained "confidential" communications as defined by the Rule. *See id.* 510(a)(4). Thus, the privilege of the Rule applies to Easter's communications and records unless defeated by the exception. *See id.* 510(d)(5). Turner makes no claim that Easter is making an "offensive use" of the privilege, a doctrine independent from and unrelated to the privilege exception in Rule 510. *See R.K.*, 887 S.W.2d at 841.

Because the opinion in *R.K.* discusses the condition about which the records are sought in terms of whether it is an "ultimate" issue or a "central" issue, one might believe that the types of issues involved are those that will be actually submitted to the jury. We do not believe that is what the Court meant; rather, the Court appears to include factual issues that the factfinder might have to decide in order to decide the questions actually asked of it. The Court held that R.K.'s medical records were discoverable because the plaintiffs had alleged that another defendant, a hospital, was negligent in selecting, training, and supervising R.K. Although the factfinder might not be specifically asked to

decide what R.K.'s condition was, it would necessarily have to decide about the condition in order to decide if the hospital was negligent in some manner due to the condition.

■ Here, Turner alleges that Wise was negligent in his diagnosis of Easter and in representing to Turner that Easter's condition was no threat to Amy. Although the factfinder may not be asked about Easter's condition, it will necessarily have to determine his condition to decide if Wise was negligent. Thus, applying the reasoning of *R.K.*, we hold that the Respondent did not abuse his discretion in ruling that the exception of Rule 510 applies.[1] *See R.K.*, 887 S.W.2d at 842–44; Tex.R.Civ.Evid. 510(d)(5). We need not address other allegations contained in Turner's current pleading that might support production of the records.

Under *R.K.*, the Respondent had the duty of determining whether the records were "closely related in time and scope to the claims made." *See R.K.*, 887 S.W.2d at 843. Having reviewed the records *in camera*, we conclude that Respondent could have reasonably determined that they are closely related in both scope and time. *See id.*

Finally, Easter contends that Turner does not have a claim against Wise because there was no doctor-patient relationship between them. *See Bird v. W.C.W.*, 868 S.W.2d 767, 770 (Tex.1994) (holding that no professional duty is owed to third parties). This argument overlooks the fact that Turner brought suit as the next friend of Amy, who did have such a relationship with Wise.

## SELF INCRIMINATION

■ Easter also contends that his right against self-incrimination precludes discovery of his records. He says that the records in the hands of Wise should not be discoverable because that would defeat the claim of privilege he raised when the request for production was directed to him—a claim that the court upheld. He claims that statements Wise recorded in his records were made "in the context of a criminal investigation" as part of an agreement that he would not be prosecuted if he sought treatment and that they were therefore "compelled testimony." Further, he argues that he did not waive his right against self-incrimination by making the statements to Wise because he relied on Rule 510 as it existed prior to the 1988 amendments. According to Easter, "Whatever the Supreme Court meant to do when it amended Rule 510(d)(5) in 1988, it could not have meant to do this."

Respondent replies that Easter's conviction for aggravated sexual assault arising out of these facts is final, that only "compelled testimonial communications" benefit from the privilege against self-incrimination, and that, in any event, he would not lose any privilege he may have because the disclosure will not be voluntary. *See Doe v. United States*, 487 U.S. 201, 207, 108 S.Ct. 2341, 2345, 101 L.Ed.2d 184 (1988) ("This Court has explained that 'the privilege protects a person only against being incriminated by his own compelled testimonial communications.'"); *Bryan v. State*, 837 S.W.2d 637, 643 (Tex. Crim.App.1992) ("The privilege ceases only when liability to punishment no longer exists."); *Easter v. State*, 867 S.W.2d 929, 942 (Tex.App.—Waco 1993, pet. ref'd) (affirming conviction); *Carmona v. State*, 880 S.W.2d 227, 235 (Tex.App.—Austin 1994, no writ) (recognizing that the provision in Rule 511 for waiver only applies when information "voluntarily" disclosed and holding waiver occurred by defendant's use of favorable part of conversation). Easter's response is that the applicable statute of limitations exposes him to liability for a ten-year period that has not yet expired. *See* Tex.Code Crim.Proc. Ann. art. 12.01(2)(D) (Vernon Supp.1995).

We believe that Rule 511, virtually identical in the civil and criminal evidence rules, provides protection against the harm which Easter foresees. *See* Tex.R.Crim.Evid. 511; Tex.R.Civ.Evid. 511. By continually objecting to the production of the documents, he will have prevented a voluntary disclosure. *See id.*

---

1. We apply the interpretation of the Rule directed by the Supreme Court in *R.K.*, as we must, but believe that, because the determination is made on the basis of pleadings and anyone can plead anything at any time, the exception will eventually swallow the privilege.

## CONCLUSION

Because he properly applied the interpretation of Rule 510 given by the Supreme Court in *R.K.*, we hold that Respondent did not abuse his discretion in ordering Dr. Wise to produce Easter's mental health records. *See R.K.*, 887 S.W.2d at 842–43; *Walker*, 827 S.W.2d at 839–40; TEX.R.CIV.EVID. 510. Easter's petition for writ of mandamus is denied.