

IN THE
TENTH COURT OF APPEALS

_____

No. 10-08-00364-CV

IN RE ROBERT L. WILLIAMS, INDIVIDUALLY AND ON BEHALF OF
THE ESTATE OF ALBERTA SUE WILLIAMS, DECEASED AND ON
BEHALF OF WRONGFUL DEATH BENEFICIARIES ROBERT L.
WILLIAMS AND DUSTIN STROM

_____

Original Proceeding

MEMORANDUM OPINION

Robert L. Williams, individually and on behalf of the Estate of Alberta "Sue" Williams, deceased, and on behalf of wrongful death beneficiaries Robert L. Williams and Dustin Strom, seeks a writ of mandamus directing Respondent, the Honorable Steve Smith, judge of the 361st Judicial District Court of Brazos County, to vacate an order compelling the production of Dustin's mental health records. We conditionally grant the relief requested.

## FACTUAL BACKGROUND

Sue, a tractor-trailer driver, sustained injuries in an accident with another tractor trailer. As a result, she suffered from chronic pain and depression. Her pain was controlled by medication. While her husband Robert, also a truck driver, was out of town working, Sue fell and was unable to get up. She went without food and water for approximately two days. Robert contacted authorities when he was unable to reach Sue. Sue was taken to College Station Medical Center. She suffered from dehydration, renal failure, and rhabdomyolysis. Physicians Wendell Lobb, M.D. and Steven Opersteny, M.D. treated her. After her discharge, Sue received home health care from Healthwise Home Health Care Agency. Approximately two and a half weeks later, Sue was found dead in her home.

At the time of Sue's death, her fifteen-year old son Dustin resided in New York with his father and stepmother. Sue and Dustin's father were in the midst of a custody battle. Dustin and Sue had not been getting along. Dustin was not invited to Sue's and Robert's wedding, and he had not spoken to Sue in several months or visited her in Texas. In March 2004, Dustin began meeting with a counselor. These sessions continued until January 2005, approximately two months after Sue's death. Dustin subsequently dropped out of high school for missing too many days. He missed school because he lost approximately sixty pounds, which lowered his immune system and caused him to be ill more often. He opined that his weight loss may have resulted from the depression he suffered as a result of Sue's death.

Robert sued the Medical Center, Dr. Lobb, Dr. Opersteny, and Healthwise ("Real Parties in Interest"), alleging negligence and seeking mental anguish damages. At his deposition, Dustin declined to answer questions regarding his mental healthcare provider. Dr. Lobb and Dr. Opersteny filed a motion to compel production of Dustin's mental health records. The Medical Center and Healthwise filed a joint motion to compel. Robert informed Respondent that the only available medical or mental health records were those created during Dustin's counseling sessions. After an *in camera* inspection, Respondent ordered production of the records.

## MANDAMUS REQUIREMENTS

Generally, privileged matters are not discoverable. *In re Fort Worth Children's Hosp.*, 100 S.W.3d 582, 587 (Tex. App.—Fort Worth 2003, orig. proceeding); *see In re Nance*, 143 S.W.3d 506, 510 (Tex. App.—Austin 2004, orig. proceeding). A discovery order is improper if it compromises a person's right to possible claims of privilege or mandates the disclosure of privileged information that exceeds the scope of discovery. *Fort Worth Children's Hosp.*, 100 S.W.3d at 587. Mandamus is the appropriate remedy when the trial court has erroneously granted discovery of privileged documents. *Id*. Remedy by appeal in that case is ineffective because, once revealed, the documents cannot be protected. *Id*. The party claiming privilege has the burden to establish the privilege. *Id*; *see also* TEX. R. CIV. P. 193.4(a).

## ISSUES PRESENTED

Robert contends that Respondent abused his discretion by compelling production of Dustin's mental health records because they are protected by the mental

health information privilege. Real Parties in Interest contend that the records are discoverable because: (1) the mental health information privilege was waived; (2) the patient-litigant exception applies; and (3) the offensive-use doctrine applies.

## WAIVER

A party should not object to a request for written discovery on the grounds that it calls for production of material or information that is privileged but should instead comply with Rule 193.3. TEX. R. CIV. P. 193.2(f). A party who objects to production of privileged material or information does not waive the privilege but must comply with Rule 193.3 when the error is pointed out. *Id.* A party who claims that material or information responsive to written discovery is privileged may withhold the privileged material or information from the response. TEX. R. CIV. P. 193.3(a). The party must state--in the response (or an amended or supplemental response) or in a separate document--that: (1) information or material responsive to the request has been withheld (2) the request to which the information or material relates, and (3) the privilege or privileges asserted. *Id.*

Real Parties in Interest contend that Robert waived the mental health information privilege by failing to assert it in response to discovery requests. Specifically, in response to an interrogatory seeking the identities of all medical providers that "have or are presently treating Dustin Strom for injuries he alleges were caused by the events in question," Dustin stated that he was "treated by a counselor in New York after his mother's death whose name will be provided in supplement to this answer." This answer was later supplemented: "Upon further investigation, Plaintiff has discovered

that Dustin has not been treated for any injuries related to the events in question." In response to a request for "all medical records relating to any injury you allegedly suffered as a result of the alleged incident," Robert objected on the basis of Rules of Civil Procedure 192.3, 194.1, 176.7, and 192.4.

Although Robert did not assert the mental health information privilege in response to these requests, he argues that Dustin's mental health records were not responsive to these requests. Moreover, he asserted the privilege in response to a request for production specifically seeking "All medical reports and medical records pertaining to Dustin Strom":

> Plaintiff further objects to this request as violating and invading Dustin Strom's physician-patient privilege set forth in T.R.E. 509 and 510, to the extent it seeks medical information beyond that relevant to an issue of the physical, mental or emotional condition of decedent on which any party relies as a part of their claim or defense.[1]

Moreover, during Dustin's deposition, counsel instructed him not to answer any questions regarding whether he has seen any counselors, stating that such information is "not discoverable" and is "privileged." Robert further asserted the privilege in response to the motion to compel production of Dustin's mental health records.

Rule 193.3 makes clear that privileges need not be asserted in the response to discovery requests, but may be asserted in supplemental or amended responses or a separate document. *See* TEX. R. CIV. P. 193.3(a). Nor is there a time limit within which to assert such a privilege. *See In re Graco Children's Prods.*, 173 S.W.3d 600, 605 (Tex.

---

[1] The response further stated, "An executed authorization of relevant medical records of Dustin Strom will be provided if and when it is determined that Dustin Strom has suffered from injuries that are or were treated by a health care provider."

App.—Corpus Christi 2005, orig. proceeding) ("Although the time limit for objecting to written discovery is 30 days from the date of service, no objection needs to be made to preserve a privilege and the rules set no time-limit for asserting a privilege."); *see also* TEX. R. CIV. P. 193.2(f), 193.3(a). The record demonstrates that the mental health information privilege was raised in the trial court when applicable.[2] *See In re BP Prods. N. Am. Inc.*, 263 S.W.3d 106, 111-12 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) ("[T]he party seeking to resist discovery bears the burden of pleading and proving an applicable privilege."); *see Nance*, 143 S.W.3d at 510 (mental health information privilege was waived by virtue of failure to assert it in the trial court). Robert did not waive the right to assert the mental health information privilege.

## MENTAL HEALTH INFORMATION PRIVILEGE

The mental health information privilege protects the following from disclosure in civil cases: (1) communications between a patient and a professional; and (2) records of the identity, diagnosis, evaluation, or treatment of a patient which are created or maintained by a professional. TEX. R. EVID. 510(b)(1), (2). The patient-litigant exception allows for disclosure of a "communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense." TEX. R. EVID. 510(d)(5). The exception applies when the records are "relevant to the condition at issue" and the "condition is relied upon as a part of a party's claim or defense, meaning that the

---

[2]    Real Parties in Interest cite *Kavanaugh v. Perkins*, 838 S.W.2d 616 (Tex. App.—Dallas 1992, orig. proceeding), in support of their contention that the mental health information privilege has been waived. In *Kavanaugh*, the privilege was raised for the first time in the petition for mandamus. *See Kavanaugh*, 838 S.W.2d at 620. Here, the privilege was raised in the trial court; thus, *Kavanaugh* is inapplicable.

condition itself is a fact that carries some legal significance." *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) (orig. proceeding). A condition is "'part' of a claim or defense if the pleadings indicate that the jury must make a factual determination concerning the condition itself." *Id*.

Even then, "patient records should be revealed only to the extent necessary to provide relevant evidence relating to the condition alleged." *Id*. "[C]ourts reviewing claims of privilege and inspecting records *in camera* should be sure that the request for records and the records disclosed are closely related in time and scope to the claims made so as to avoid any unnecessary incursion into private affairs." *Id*. If a record "includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected." *Id*.

**Analysis**

Whether Respondent abused his discretion depends on whether Dustin's records are "relevant to the condition at issue" and whether the condition itself is of legal consequence to a claim or defense. *R.K.*, 887 S.W.2d at 843. Real Parties in Interest argue that: (1) Dustin placed his mental health in issue by claiming that he suffered depression and weight loss and dropped out of school after Sue's death; (2) "[s]hould a jury find negligence against a Defendant in this case, it will then make a factual determination concerning Plaintiff Dustin Strom's mental condition, injury thereto, and award a dollar amount to compensate him"; and (3) the records "relate to treatment [Dustin] received at the time his injuries for mental anguish incurred." They rely on *Wimberly Resorts Prop., Inc. v. Pfeuffer*, 691 S.W.2d 27 (Tex. App.—Austin 1985, orig.

proceeding) and *Easter v. McDonald*, 903 S.W.2d 887 (Tex. App.—Waco 1995, orig. proceeding) to support their position.

In *Wimberly*, Donald Dibble sued Wimberly, seeking damages for emotional trauma resulting from a scuba diving accident on Wimberly's property. *See Wimberly*, 691 S.W.2d at 28. Wimberly attempted to take a deposition by written questions of the custodian of records of Dibble's psychiatrist as evidence of Dibble's physical, mental, and emotional condition prior and subsequent to the accident. *Id*. Dibble sought a protective order based on privilege, which the trial court granted. *Id*. The Austin Court instructed the trial court to set aside the order:

> Because the psychiatrist is a professional under Rule 510(a)(1), Dibble is a patient under Rule 510 (a)(2), and the communication was in the nature of consultation for the diagnosis, examination, evaluation, or treatment of an emotional or mental condition, the information is within the rule's privilege of confidentiality. Because Dibble has placed his mental or emotional condition in issue by his suit, the information is within the exception of Rule 510(d)(5).

*Id*. at 29-30.

In *Easter*, Stanley Turner sued Easter, his ex-wife Cecelia, and counselor John Wise, alleging that Easter sexually assaulted his daughter Amy during Easter's marriage to Cecelia. *See Easter*, 903 S.W.2d at 889. Between marriages, Easter, Cecelia, and Amy had met with Wise. *Id*. Easter and Cecelia re-married. *Id*. Turner alleged that the abuse continued during this second marriage. *Id*. Turner sought Easter's medical records. *Id*. Wise asserted the mental health information privilege. *Id*. Turner sought to compel production of the records. *Id*. The trial court ordered Wise to produce the records. *Id*. In a second order, the trial court found that Amy's records

were discoverable, but references to Cecelia in Easter's or Amy's records should be deleted. *Id.* Easter requested an *in-camera* inspection. *Id.* After the inspection, the trial court sustained Easter's objection. *Id.* Turner amended his petition and requested reconsideration of the ruling. *Id.* The trial court ordered disclosure of Amy's and Easer's records with deletion of any references to Cecelia. *Id.*

We held that the trial court did not abuse its discretion by applying the patient-litigant exception because Turner had alleged that Wise was "negligent in his diagnosis of Easter and in representing to Turner that Easter's condition was no threat to Amy." *Id.* at 891. "Although the factfinder may not be asked about Easter's condition, it will necessarily have to determine his condition to decide if Wise was negligent." *Id.*

*Easter* is distinguishable from the present case. Whether Wise was negligent depended on Easter's condition; thus, the jury was required to "make a factual determination concerning the condition itself." *R.K.*, 887 S.W.2d at 843. Here, for reasons discussed below, the jury need not decide Dustin's mental condition before awarding damages for mental anguish that he suffered as a result of Sue's death.

Since *Wimberly*, the Texas Supreme Court rendered its decision in *R.K.* Courts applying *R.K.* have found that a plaintiff's past mental problems are "distinct from the mental anguish associated with a personal injury or loss; a tortfeasor takes a plaintiff as he finds him or her." *Nance*, 143 S.W.3d at 512; *see In re Pennington*, No. 2-08-00233-CV, 2008 Tex. App. LEXIS 5359, at *9 (Tex. App.—Fort Worth July 16, 2008, orig. proceeding) (mem. op.); *see also In re Chambers*, No. 03-02-00180-CV, 2002 Tex. App. LEXIS 4567, at *11-12 (Tex. App.—Austin June 27, 2002, orig. proceeding) (not

designated for publication) (Plaintiff's petition alleged nothing more than a "routine mental anguish claim"). A claim for mental anguish or emotional distress will not, standing alone, make a plaintiff's mental or emotional condition a part of the plaintiff's claim. *In re Toyota Motor Corp.*, 191 S.W.3d 498, 502 (Tex. App.—Waco 2006, orig. proceeding).

> A routine allegation of mental anguish or emotional distress does not place the party's mental condition in controversy. The plaintiff must assert mental injury that exceeds the common emotional reaction to an injury or loss.

*Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex. 1988);[3] *see Nance*, 143 S.W.3d at 512; *see also In re Doe*, 22 S.W.3d 601, 610 (Tex. App.—Austin 2000, orig. proceeding); *Chambers*, 2002 Tex. App. LEXIS 4567, at *11-12.

In *Pennington*, which involved a traffic accident, the trial court ordered Pennington to (1) sign a medical release as to any records relating to her mental health history; and (2) supplement discovery to provide the names of her mental health care providers. *See Pennington*, 2008 Tex. App. LEXIS 5359, at *1. Pennington had asserted the mental health information privilege. *Id*. at *1-2. Medical records addressing the

---

[3] *Coates* did not address the mental health information privilege, but created a test for compelling a party to submit to a mental examination. *See Coates v. Whittington*, 758 S.W.2d 749, 751 (Tex. 1988) (addressing former Rule of Civil Procedure 167a, now Rule 204.1 (physical and mental examination)). As part of that test, the "movant must show that the party's mental condition is 'in controversy'", which is not accomplished by a "routine allegation of mental anguish or emotional distress." *Id*. at 751, 753. The new Rule has changed this test to some extent. *See In re Transwestern Publ'g Relators Co.*, 96 S.W.3d 501, 507 n.1. (Tex. App.—Fort Worth 2002, orig. proceeding) ("[R]ule 204.1(c) has made the showing of 'in controversy' unnecessary under both prongs of the *Coates* test when the party moving for a mental examination relies on rule 204.1(c)(2)."). Courts have cited *Coates* in the context of Rules of Evidence 509 and 510. *See In re Pennington*, No. 2-08-00233-CV, 2008 Tex. App. LEXIS 5359, at *7 (Tex. App.—Fort Worth July 16, 2008, orig. proceeding) (mem. op.); *see also In re Toyota Motor Corp.*, 191 S.W.3d 498, 502 (Tex. App.—Waco 2006, orig. proceeding); *In re Nance*, 143 S.W.3d 506, 512-13 (Tex. App.—Austin 2004, orig. proceeding); *In re Doe*, 22 S.W.3d 601, 610 (Tex. App.—Austin 2000, orig. proceeding).

injuries she allegedly sustained in the accident showed that Pennington was taking antidepressant and antianxiety medication at the time of the accident. *Id*. at *2. The defendants alleged that Pennington's "injuries, damages and/or liabilities" resulted from "pre-existing mental, emotional, and/or physical conditions and disabilities." *Id*. at *2-4. The Fort Worth Court found that the trial court abused its discretion:

> The fact that a plaintiff has had past mental problems is distinct from the mental anguish associated with a personal injury or loss; a tortfeasor takes a plaintiff as he finds her. Defensive claims that a plaintiff's damages and injuries were caused by pre-existing conditions do not involve the resolution of ultimate issues of fact that have legal significance standing alone. Instead, these types of defensive assertions are in the nature of inferential rebuttal claims and, thus, are not sufficient to put a plaintiff's mental condition at issue so as to make medical records about that condition discoverable.

*Id*. at *9-10 (internal citations and footnotes omitted).

In *Doe*, the Austin Court found that the plaintiff's mental health records were not relevant because the plaintiff had not "alleged any '*severe emotional condition*' that would place her mental condition in issue so as to trigger the litigation exception and waive her privilege regarding her mental health records":

> To hold otherwise would suggest that every time a plaintiff raises a claim for past and future mental anguish damages her mental condition would be in issue and thereby all mental health records would be discoverable. This proposition is contrary to the express holding of the Texas Supreme Court in *Coates*.

*Doe*, 22 S.W.3d at 610 (emphasis added).

In *Nance*, the Austin Court found that the decedent's "mental health history [was] not a 'part' of either the Nances' claims or the defendants' defenses". *Nance*, 143 S.W.3d at 512. The plaintiffs' pleadings merely alleged "facts and circumstances

surrounding Ms. Nance's 2002 hospitalization, surgery, follow-up care, and the damages suffered as a result of her death." *Id*. The pleadings did not place the decedent's mental health history in dispute. *See id*.

Real Parties in Interest contend that, unlike *Nance* and *Doe*, the present case does not involve a tenuous relationship between the "records sought and the claims or defenses asserted," the records were not sought early in the discovery process, and Respondent reviewed the records *in camera*. *See Nance*, 143 S.W.3d at 512-13; *see also Doe*, 22 S.W.3d at 210. Despite these factual differences, the question is still the same: whether the records are relevant to a condition at issue that is of legal consequence to a claim or defense. *See R.K.*, 887 S.W.2d at 839, 844 (trial court had conducted an *in camera* inspection; trial court's order was overly broad, as some of the information in the defendant's mental health records was "not relevant to the condition at issue").

Applying *R.K.*, we hold that Dustin's mental health records are not "relevant to the condition at issue" and the condition itself is not of legal consequence to a claim or defense. *R.K.*, 887 S.W.2d at 843. Any mental health problems from which Dustin suffered before Sue's death are distinct from the mental anguish associated with the loss of Sue. *See Nance*, 143 S.W.3d at 512; *see also Pennington*, 2008 Tex. App. LEXIS 5359, at *9; *Chambers*, 2002 Tex. App. LEXIS 4567, at *11-12. Dustin's testimony that his weight loss "could have had something to do with the depression" resulting from Sue's death is insufficient to place his mental health in issue. Dustin also testified that he was not sure what had caused the weight loss and he had never obtained any "official advice" as to the cause. In fact, Dustin was fifteen years of age when Sue died, but did not drop

out of school until April of his senior year in high school. Dustin's testimony merely raises routine allegations of mental anguish resulting from his mother's death and does not address a mental injury exceeding a common emotional reaction to such a loss. *See Nance*, 143 S.W.3d at 512; *see also Doe*, 22 S.W.3d at 607; *Chambers*, 2002 Tex. App. LEXIS 4567, at *11-12; *Coates*, 758 S.W.2d at 753.

Moreover, the time in which the records were created does not place Dustin's mental health in issue. *See Chambers*, 2002 Tex. App. LEXIS 4567, at *13 ("Mental health records are not 'in issue' simply because they were generated at a time corresponding to the events giving rise to a lawsuit."). Nor is an allegation that Dustin's damages and injuries were caused by a pre-existing condition sufficient to do so.[4] Such an allegation amounts to an inferential rebuttal claim that does not place a "mental condition at issue so as to make medical records about that condition discoverable." *Pennington*, 2008 Tex. App. LEXIS 5359, at *9-10; *see Nance*, 143 S.W.3d at 512-13.

For these reasons, we hold that the patient-litigation exception to the mental health information privilege does not apply. Because the mental health information privilege does apply, Respondent abused his discretion by compelling production of Dustin's mental health records.

**OFFENSIVE-USE DOCTRINE**

A plaintiff seeking affirmative relief cannot "maintain the action, and at the same time maintain evidentiary privileges that protect from discovery outcome determinative

---

[4]     Dr. Lobb and Dr. Opersteny alleged, "any injuries, damages or liability complained of by the Plaintiffs are the result, in whole or in part, of pre-existing conditions and disabilities and are not the result of any act or omission on the part of the Defendants." The Medical Center also alleged, "Plaintiffs' alleged damages are the result of a pre-existing condition…"

information not otherwise available to the defendant." *Texas Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 761 (Tex. 1995) (citing *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 107 (Tex. 1985) (orig. proceeding)). This doctrine consists of three elements: (1) a party must be seeking affirmative relief; (2) the party is using a privilege to protect outcome determinative information; and (3) the protected information is not otherwise available to the defendant. *Id.* (citing *Republic Ins. v. Davis*, 856 S.W.2d 158 (Tex. 1993)). "[T]he offensive use doctrine is independent from and unrelated to the privilege exception for patient-litigants stated in Rules 509(d)(4) and 510(d)(5)." *R.K.*, 887 S.W.2d at 841.

Real Parties in Interest maintain that "Dustin [] was treated for his mental condition after the death of [Sue], as he was already in treatment for emotional injury stemming from his relationship with [Sue]." They contend that Dustin's records "relate directly to his 'ordinary mental anguish' claim"; thus, withholding evidence that "could materially weaken or defeat his claims, [would] unjustly impair[] [their] right and ability to evaluate and defend against such claims." They do not attempt to establish the elements of the offensive-use doctrine, but rely on *Midkiff v. Shaver*, 788 S.W.2d 399 (Tex. App.—Amarillo 1990, orig. proceeding).

In *Midkiff*, the trial court found that the plaintiffs' medical records were discoverable because they sought mental anguish damages. *See Midkiff*, 788 S.W.2d at 400. The plaintiffs alleged ordinary mental anguish, but one plaintiff had been treated for some symptoms of mental anguish. *Id*. at 402. Thus, a connection existed "between her mental anguish complaint and the medical attention she sought." *Id*. The Amarillo

Court held that, as long as the plaintiffs relied on symptoms of mental anguish for which they received treatment, they could not: (1) "invoke[] privileges as a shield to prevent discovery of medical and mental health records related to [] asserted emotional condition[s]"; or (2) "refuse to answer questions pertaining to medical attention sought in connection with those claims." *Id*. at 402-03. Discovery should have been limited to those records "related to the medical attention sought for the symptoms of the respective mental anguish claims." *Id*. at 403.

Unlike in *Midkiff*, there is no connection between Dustin's mental anguish complaint arising out of Sue's death and the medical attention he sought before Sue's death. Those records are not related to the emotional conditions that form the basis of Dustin's mental anguish claim.

Moreover, *Midkiff* does not address the elements of the offensive-use doctrine. Robert contends that the second element cannot be met because Dustin's records are not outcome determinative: (1) Real Parties in Interest must take Dustin as they found him and "compensate him for the amount of mental anguish he suffered," regardless of his mental state at the time of Sue's death; and (2) Dustin's strained relationship with Sue does not defeat his mental anguish claim. Robert further argues that the third element cannot be met because evidence of a strained relationship between Sue and Dustin is available from other sources. We agree.

To be outcome determinative, a "confidential communication must go to the very heart of the affirmative relief sought." *Davis*, 856 S.W.2d at 163. "Mere relevance is insufficient." *Id*. "A contradiction in position without more is insufficient." *Id*. We

have already determined that Dustin's mental state at the time of Sue's death is distinct from the mental anguish he suffered as the result of her death. Moreover, the record contains other evidence besides Dustin's medical records that reveal a strained relationship between Sue and Dustin. Robert testified that Sue had instructed him that Dustin was not to know in the event she died and that Dustin was to inherit nothing. The record also contains documents from the local sheriff's department regarding a prior suicide attempt by Sue. These records contain a suicide note stating that Dustin is not to "get anything I have", "I am tired of waiting on people who s--- on me," Dustin is a "bastard[]", and "when I am dead Dustin will get more money, but I will haunt you to your grave[]"…"promise".

If any one of the three elements of the offense-use doctrine is lacking, the privilege must be upheld. *See Davis*, 856 S.W.2d at 163. Neither elements two nor three have been established in this case. Accordingly, the mental health information privilege is not waived by the offense use doctrine.

**CONCLUSION**

Having found that Dustin's mental health records are protected by the mental health information privilege and that the offensive-use doctrine does not apply, we conclude that Robert has no adequate remedy by appeal. *See Fort Worth Children's Hosp.*, 100 S.W.3d at 587; *see also Nance*, 143 S.W.3d at 510. We, therefore, conditionally grant the writ. The writ will issue only if Respondent fails to advise this Court in writing within fourteen days after the date of this opinion that he has vacated his order compelling production of Dustin's mental health records.

FELIPE REYNA
Justice

Before Chief Justice Gray
        Justice Reyna, and
        Justice Davis
        (Chief Justice Gray dissenting with note)*
Writ conditionally granted
Opinion delivered and filed March 4, 2009
[OT06]

*        (Chief Justice Gray dissents.  A separate opinion will not issue.  He notes, however, that while he generally agrees with the legal discussion he disagrees with its application to the facts of this proceeding.  He notes that because mental anguish is part of the damages sought and that the proximate cause, which is not only an element of the plaintiff's case necessary to prove his claim, but is also an issue contested by and thus constitutes part of the defendant's defense to that claim, he is of the opinion that the trial court's decision was not an abuse of discretion and would, therefore, deny the petition for writ of mandamus.)