**In re FORT WORTH CHILDREN'S HOSPITAL d/b/a Cook Children's Medical Center, Relator.**

No. 2–02–373–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 28, 2003.

Cantey & Hanger, L.L.P., Carol J. Traylor, Jordan M. Parker, Evelyn R. Leopold, Stephen L. Tatum, Fort Worth, for Relator.

Dent Lawfirm, Dwain Dent, Fred L. Streck, III; Kobs & Haney, P.C., Jeff H. Kobs, Mark Haney, Fort Worth, for Real Parties.

Art Brender, Fort Worth, Attorney Ad Litem.

PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### I. Introduction

This original proceeding involves a discovery dispute. Relator Fort Worth Children's Hospital d/b/a Cook Children's Medical Center (Cooks) seeks mandamus relief from the trial court's October 18, 2002 order requiring it to produce (a) the names and "face sheets" of all infants who received the vitamin supplement E–Ferol while patients at Cooks in 1984 and (b) the names of those patients' parents.

### II. Background

The underlying case in this original proceeding is a health care liability suit arising out of the care and treatment of four premature infants who were patients at Cooks between January and April of 1984 and who received E–Ferol. E–Ferol is a high potency intravenous vitamin E solution that the FDA recalled in April 1984. The real parties in interest sued Cooks because its pharmacy dispensed the E–Ferol to the infants based on prescriptions written by the children's physicians. E–Ferol was administered to patients at Cooks for a limited time only, i.e., January through April of 1984.

In several discovery requests, the real parties in interest have asked Cooks to reveal the names and addresses of all patients who were administered E–Ferol while at Cooks. Cooks objected to these requests on the basis that this information is protected by the physician-patient privilege. The real parties in interest filed a motion to compel Cooks to give them this information, and the trial court held numerous hearings on the motion. One of the trial court's concerns during the hearings was that it appeared the nonparty patients and their parents had not been informed that the children had received E–Ferol while at Cooks.

On October 18, 2002, the trial court signed an order requiring Cooks to produce the names and "face sheets"[1] of all patients who received E–Ferol while at Cooks in 1984; however, the order does not require Cooks to produce this information to the real parties in interest, but to Art Brender, the guardian ad litem who had previously been appointed for two of the real parties in interest who were represented by their parents as next friend. In its order, the court authorized Brender to contact the nonparty patients and their parents and inform them that the patients received E–Ferol while at Cooks. The court's order specifically requires Brender not to reveal the information about the

---

1. The face sheets appear to be the admitting paperwork for the patients and include information such as the name and address of the patient and his or her parents. They also include social security numbers and employment information.

nonparty patients to any persons other than the patients, their parents, and any other court-appointed guardian without a further court order. The trial court's order states that it is "[o]f concern to this Court that some child may be suffering consequences of E–Ferol toxicity and may not know it" and that the court "believes the patients and their parents have a right to be informed of the administration of the drug."

After Cooks filed this original proceeding, Brender filed an emergency motion to appoint him guardian ad litem of the nonparty patients. The court granted this motion on the basis that Brender had been acting in this capacity for several years. The court stated in its order that the nonparty patients were minors when the case began and that they may currently be incompetent.

### III. Mandamus Standard of Review

■ In deciding whether a writ of mandamus is appropriate, we recognize that mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex.2000) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding).

With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Id.* at 839–40. This burden is a heavy one. *Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994) (orig. proceeding).

■ Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling because a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id.*

■ Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig. proceeding). In making the determination of whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *Id.* The rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence. *See* Tex.R. Civ. P. 192.3(a). However, this broad grant is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex.1998) (orig. proceeding).

■ Appellate courts will not intervene to control incidental trial court rulings when an adequate remedy by appeal exists. *Walker*, 827 S.W.2d at 840. An appellate remedy is not inadequate merely because it might involve more expense or delay than obtaining a writ of mandamus. *In re Ford Motor Co.*, 988 S.W.2d 714, 722–23 (Tex.1998) (orig. proceeding);

*Walker,* 827 S.W.2d at 842. A party will not have an adequate remedy by appeal: (1) when the appellate court would not be able to cure the trial court's discovery error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; and (3) where the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *Ford,* 988 S.W.2d at 721; *Walker,* 827 S.W.2d at 843.

## IV. Analysis

Cooks contends the trial court abused its discretion in ordering Cooks to produce the names and face sheets of the nonparty patients because: the face sheets are subject to the physician-patient privilege and, thus, are protected from disclosure; the trial court abused its discretion in appointing a guardian ad litem for the nonparty patients for the purpose contemplated in the October 18, 2002 order; the trial court's findings in the October 18, 2002 order do not support its conclusion; and the information in the face sheets is not relevant to the underlying lawsuit, and even if it is, the trial court did not properly balance the need for the information against the nonparty patients' privacy rights.[2]

### *Physician–Patient Privilege*

■■■ Cooks argues that the production of nonparty patient names and other identifying information violates the physician-patient privilege provided for in rule 509 of the Texas Rules of Evidence and section

159.002 of the Texas Occupations Code, which Cooks contends was extended to hospitals in section 241.152 of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 241.152 (Vernon 2001); TEX. OCC.CODE ANN. § 159.002 (Vernon 2003); TEX.R. EVID. 509.

■■■ Generally, privileged matters are not discoverable. *In re Anderson,* 973 S.W.2d 410, 411 (Tex.App.-Eastland 1998, orig. proceeding). A discovery order is improper if it compromises a person's right to possible claims of privilege or mandates the disclosure of privileged information that exceeds the scope of discovery. *In re Dolezal,* 970 S.W.2d 650, 651 (Tex.App.-Corpus Christi 1998, orig. proceeding) (citing *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 553 (Tex.1990) and *Mutter v. Wood,* 744 S.W.2d 600, 601 (Tex.1988)). Mandamus is the appropriate remedy when the trial court has erroneously granted discovery of privileged documents. *In re Anderson,* 973 S.W.2d at 411. Remedy by appeal in that case is ineffective because, once revealed, the documents cannot be protected. *In re Dolezal,* 970 S.W.2d at 651. The party claiming privilege has the burden to establish the privilege. *See* TEX.R. CIV. P. 193.4(a); *Jordan v. Court of Appeals,* 701 S.W.2d 644, 648–49 (Tex.1985) (orig. proceeding).

Section 241.152 of the health and safety code provides that a hospital or its agents or employees may not disclose health care information about a patient to any person other than the patient or the patient's legally authorized representative without written consent. TEX. HEALTH & SAFETY

---

**2.** We note that the propriety of the trial court's appointment of the guardian ad litem is potentially dispositive of whether the trial court's October 18, 2002 order was an abuse of discretion. However, we will first address the privilege and relevancy issues because of the likelihood of these issues repeating in this case. *Compare* TEX.R.APP. P. 47.1 (directing court of appeals to hand down an opinion that is as brief as practicable, but addresses every issue raised and necessary to final disposition of appeal) *with* TEX.R.APP. P. 2 (providing that court may for good cause suspend a rule's operation in a particular case).

CODE ANN. § 241.152. "Health care information" is defined as "information recorded in any form or medium that identifies a patient and relates to the history, diagnosis, treatment, or prognosis of a patient." *Id.* § 241.151(2). Contrary to Cooks's assertions, section 241.152 does not make "health care information" privileged; it merely imposes liability on a hospital for disclosing health care information in violation of the statute by creating a statutory remedy for injunctive relief and damages. *Compare id.* § 241.152(a) (stating that "[e]xcept as authorized by Section 241.153, a hospital or an agent or employee of a hospital may not disclose health care information about a patient to any person other than the patient or the patient's legally authorized representative without the written authorization of the patient or the patient's legally authorized representative") *with* TEX. OCC.CODE ANN. § 160.007(a) (providing that "[e]xcept as otherwise provided by this subtitle, each proceeding or record of a medical peer review committee is confidential, and any communication made to a medical peer review committee is *privileged*") (emphasis added) *and* TEX. HEALTH & SAFETY CODE ANN. § 161.032(a) (stating that "[t]he records and proceedings of a medical committee are confidential and are not subject to court subpoena"); *but see In re Columbia Valley Reg'l Med. Ctr.,* 41 S.W.3d 797, 799 (Tex.App.-Corpus Christi 2001, orig. proceeding) (stating that "the Texas Health and Safety Code provides that all health care information found in hospital records is privileged and cannot be disclosed without authorization" and citing no authority other than health and

safety code section 241.151(2)). However, section 241.153(19) provides an exception for documents that are disclosed subject to a trial court order. Thus, section 241.153(19) shields a hospital from liability to a patient for disclosing health care information pursuant to a court order.[3] TEX. HEALTH & SAFETY CODE ANN. § 241.153(19).

■ Because the face sheets are not privileged under section 241.152, we must determine whether they are privileged under any other statute or rule. Rule of evidence 509(c)(2) provides that "[r]ecords of the identity, diagnosis, evaluation, or treatment of a patient by a physician, *created or maintained by a physician,* are confidential and privileged and may not be disclosed." TEX.R. EVID. 509(c)(2) (emphasis added). Section 159.002 of the occupations code essentially mirrors this language and provides further that any person receiving confidential communications other than a person acting on the patient's behalf may not disclose the information except in a manner consistent with the purposes for which it was given. TEX. OCC.CODE ANN. § 159.002(b), (c). A confidential communication is "[a] communication *between a physician and a patient,* relative to or in connection with any professional services as a physician to the patient." *Id.* § 159.002(a) (emphasis added). Section 151.002(a)(12) defines a physician as "a person licensed to practice medicine in this state." *Id.* § 151.002(a)(12). Rule 509 defines a physician as "a person licensed to practice medicine in any state or nation, or reasonably believed by the patient so to be." TEX.R. EVID. 509(a)(2). Cooks does not

3. We also note that, although not argued by real parties in interest, another exception to section 241.152's prohibition on disclosure is "directory information," which is defined as "information disclosing the presence of a person who is receiving inpatient, outpatient, or emergency services from a licensed hospital,

the nature of the person's injury, the person's municipality of residence, sex, and age, and the general health status of the person as described in terms of 'critical,' 'poor,' 'fair,' 'good,' 'excellent,' or similar terms." TEX. HEALTH & SAFETY CODE ANN. § 241.151(1).

argue that it fits either definition of physician.

We find no evidence in the record showing who created or maintained the face sheets. While they are labeled "Admitting Form, Fort Worth Children's Hospital," there is also a space at the bottom for the treating physician's signature. However, the record contains no proof that the face sheets are completed and maintained by physicians rather than hospital employees.[4] Because Cooks did not present any evidence that the face sheets are records created or maintained by a physician, it failed to carry its burden to prove that the documents are subject to the physician-patient privilege under either rule 509 or section 159.002.[5] In addition, the physician-patient privilege may only be asserted by the patient, the patient's representative, or the physician on behalf of the patient. TEX. OCC.CODE ANN. § 159.002(e); TEX.R. EVID. 509(d). Therefore, Cooks has no standing to assert the privilege on behalf of the nonparty patients.

Accordingly, we hold that Cooks has not shown that the information in the face sheets is subject to any privilege that it could assert.

### Relevance to Underlying Suit

Cooks also challenges the trial court's order on the basis that the information it is required to turn over is not relevant to a party's medical or mental condition in the underlying lawsuit,[6] and even if it is, the court did not properly balance the nonparty patients' right to privacy against the need for the information.

Cooks's arguments regarding relevancy are based on the assumption that the information is privileged. Because we hold that Cooks has not proven that the information is privileged, it is discoverable if it is relevant to any issue in the underlying lawsuit, not just a party's physical, mental, or emotional condition.

Information is relevant for discovery purposes if it is relevant to the subject matter of the pending action, claim, or defense and is "reasonably calculated to lead to the discovery of admissible evidence." TEX.R. CIV. P. 192.3(a); In re Am. Home Assurance Co., 88 S.W.3d 370, 373 (Tex.App.-Texarkana 2002, orig. proceeding). Two of the claims of the real parties in interest are that Cooks fraudulently concealed the fact that its pharmacy administered E–Ferol to infants and that E–Ferol was recalled by the FDA and that Cooks breached a duty to notify them of the recall. Accordingly, whether or not Cooks told the nonparty patients about the E–Ferol appears to be relevant to the claims of the real parties in interest for discovery purposes. See TEX.R. CIV. P. 192.3(a).

Cooks additionally contends that the court failed to properly balance the nonparty patients' right to privacy against the need for disclosure of the information. In its discussion of this issue, Cooks asserts that a patient's medical records are within a constitutionally protected "zone of privacy." See James v. Kloos, 75 S.W.3d 153, 157 (Tex.App.-Fort Worth 2002, no

---

4. Cooks has maintained throughout discovery that the physicians who prescribed the E–Ferol were not employees of Cooks, but independent contractors.

5. Cooks does not argue that the process of identifying the patients as having received E–Ferol is privileged (i.e., that they had to rely on physician-created or maintained medical records to determine which patients received E–Ferol).

6. Information that is relevant to a patient's physical, mental, or emotional condition is excepted from the physician-patient privilege in any proceeding in which a party relies on the condition as part of its claim or defense. TEX.R. EVID. 509(e)(4).

pet.). But Cooks does not contend that the trial court's order does not "so restrict[ ] the discovery of the [nonparty patients'] identities as to preclude any risk of disclosure of [their] identities ... to *third persons.*" *Tarrant County Hosp. Dist. v. Hughes,* 734 S.W.2d 675, 685 (Tex.App.-Fort Worth 1987, original proceeding) (op. on reh'g) (emphasis added). While the trial court's order does require Cooks to turn this information over to Art Brender, it also requires Brender to keep the information confidential. Thus, we hold that Cooks has not shown that the trial court's order violates the nonparty patients' right to privacy. We further hold that the face sheets are discoverable under these facts.

### Appointment of Guardian Ad Litem

■ Cooks further argues that the trial court had no authority to appoint a guardian ad litem for the nonparty patients; therefore, requiring Cooks to produce the names and addresses of the nonparty patients to Brender for the purposes set forth in the order is an abuse of discretion. Cooks contends that there is no provision in Texas law providing for the appointment of a guardian ad litem in this situation.

■ We review the appointment of a guardian ad litem under an abuse of discretion standard. *McGough v. First Court of Appeals,* 842 S.W.2d 637, 640 (Tex.1992) (orig. proceeding) (op. on reh'g). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *See Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d

238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 241–42. A trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *Huie v. DeShazo,* 922 S.W.2d 920, 927–28 (Tex. 1996) (orig. proceeding).

■ The literal meaning of "ad litem" is "for the suit." BLACK'S LAW DICTIONARY 43 (7th ed.1999). A guardian ad litem is a personal representative of an individual subject to a disability who is appointed to protect the interests of the disabled person in any lawsuit in which that person is a party. *Pleasant Hills Children's Home of the Assemblies of God, Inc. v. Nida,* 596 S.W.2d 947, 951 (Tex.Civ. App.-Fort Worth 1980, no writ). A guardian ad litem is recognized only for specific purposes, *id.,* and his powers are limited to matters connected with the suit in which the guardian has been appointed, *Durham v. Barrow,* 600 S.W.2d 756, 761 (Tex.1980). The decision to appoint a guardian ad litem is within the discretion of the trial court. *Coleson v. Bethan,* 931 S.W.2d 706, 710 (Tex.App.-Fort Worth 1996, no writ).

■ In its December 10, 2002 order, the trial court appointed Brender as the nonparty patients' guardian ad litem on the basis that the nonparty patients were, at the beginning of the discovery dispute, minors and that even if the patients are not now minors, they may be incompetent.[7] Texas Rule of Civil Procedure 173 provides for the appointment of a guardian ad

---

7. Brender had previously been appointed guardian ad litem to represent the interests of Mark and Michael Mills, who have settled and are no longer parties to this case or original proceeding.

litem for a minor or incompetent person in the following situations: (a) the minor or incompetent may be a *defendant* to a suit and has no guardian in this state; or (b) the minor or incompetent *is a party to a suit* and is represented by a next friend or a guardian who appears to the court to have an interest adverse to the minor or incompetent. TEX.R. CIV. P. 173 (emphasis added). A trial court abuses its discretion if it appoints a guardian ad litem under subsection (b) in the absence of a conflict or if the trial court does not discharge the guardian ad litem when the conflict has ended. *See, e.g., Brownsville–Valley Reg'l Med. Ctr., Inc. v. Gamez,* 894 S.W.2d 753, 755 (Tex.1995); *McAllen Med. Ctr. v. Rivera,* 89 S.W.3d 90, 95 (Tex.App.-Corpus Christi 2002, no pet.).

In this case, the patients are neither parties to the suit nor potential defendants. In addition, they are no longer minors[8] and there is no evidence that any of them is incompetent. Further, we find no other provision in Texas law authorizing the appointment of a guardian ad litem for the nonparty patients in this case. Therefore, we hold that the trial court abused its discretion in appointing Brender guardian ad litem of the nonparty patients for the purpose set forth in the October 18, 2002 order.

## V. Conclusion

Because we hold that the trial court abused its discretion in appointing a guardian ad litem to receive the nonparty information, we conditionally grant the writ of mandamus and order the trial court to vacate its October 18, 2002 and December 10, 2002 orders.[9] A writ of mandamus

will issue only if the trial court fails to comply with these instructions.

---

8. Because the patients who received E–Ferol were born no later than April 1984, all of them would have turned eighteen before May 2002.

9. Because we order the trial court to vacate its October 18, 2002 order, we need not address Cooks's contention that the trial court abused its discretion because its findings in the order do not support its conclusion. *See* TEX.R.APP. P. 47.1.