NO. 12-03-00050-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




§
 


IN RE: HIGHLAND PINES NURSING

HOME, LTD., D/B/A HIGHLAND PINES

NURSING HOME, STEBBINS AVIATION,
§
 ORIGINAL PROCEEDING

INC., STEBBINS FIVE COMPANIES, LTD.,

JASON RYDEN, INDIVIDUALLY, AND

ELJIE EDWARD BRANTLEY, R.N.,

INDIVIDUALLY, RELATORS

§
 





 

MEMORANDUM OPINION


 Highland Pines Nursing Home, Ltd., d/b/a Highland Pines Nursing Home, Stebbins Aviation,
Inc., Stebbins Five Companies, Ltd., Jason Ryden, individually, and Eljie Edward Brantley, R.N.,
individually ("Relators"), filed a petition for writ of mandamus seeking an order requiring the trial
court to vacate its discovery order dated February 12, 2003. The order compels the production of
employee personnel files and documents summarizing information submitted to the Texas
Department of Human Services for the purposes of obtaining Medicare and Medicaid reimbursement
("TILE documents"). Relators also filed a motion for emergency relief. We granted the motion and
stayed the underlying proceeding pending our determination of the merits of the mandamus petition. 
For the reasons set forth below, we deny the writ and lift the stay.


Background


 Leslie Stanley Davis ("Davis"), as representative of the estate of Tilda Stanley, deceased, is
the plaintiff in the underlying lawsuit. Davis sued Relators to recover damages for the alleged
negligent medical care and treatment rendered to Tilda Stanley while she was a resident at Highland
Pines Nursing Home ("Highland Pines").

 On October 16, 2000, Davis served Highland Pines Nursing Home, Ltd., d/b/a Highland
Pines Nursing Home, Stebbins Aviation, Inc., and Stebbins Five Companies, Ltd. (collectively "HP")
with written discovery requests, including requests for production of (1) personnel files and
performance evaluations for all nursing personnel, administrators, directors of nursing, and
departmental heads at Highland Pines; (2) documents summarizing the daily totals of resident levels
of care and insurance for Highland Pines; and (3) any computer-generated report that identifies the
level of care and the room number of Highland Pines residents. (1) On January 16, 2001, HP filed
objections and responses to the requests, but did not make any claim of privilege. However, HP
stated that the requested documents were not reasonably available and therefore did not produce
them. After HP's response, the following sequence of events occurred:



 On June 17, 2002, Davis filed a motion to compel production of the requested documents. 
In her motion, Davis alleges that HP objected to the request for TILE documents contending,
in part, that the request seeks medical information regarding patients other than Tilda Stanley
and thereby violates patient-medical provider privilege and the Medical Practice Act. (2)
 On July 25, 2002, the parties entered an agreed order on Davis's motion to compel. HP
withdrew its "objections and privileges" to the discovery requests and agreed to respond to
the requests by August 9, 2002. Davis agreed to limit the time frame for which the requested
documents were sought.



 

 On August 19, 2002, after receiving a ten-day extension of time to respond, HP produced 51
personnel files, but stated that it was "not in possession, custody or control" of any TILE
documents.



 

 On October 29, 2002, Davis filed a motion for contempt and sanctions, which included a
motion to compel, alleging that HP had not fully complied with the agreed order. Attached
to the motion as exhibits is a series of "prodding" letters from Davis's counsel to HP's
counsel. In response, HP's counsel, by letter dated September 20, 2002, agreed to provide
the TILE documents by September 27, 2002.






 

 On November 22, 2002, HP filed a response to Davis's motion stating that the TILE
documents are protected by the physician-patient privilege and that the personnel files are
protected by the medical peer review privilege, the medical committee privilege, and the
nursing peer review privilege. 



 

 On January 3, 2003, Davis amended her motions to include allegations that HP had waived
its claims of privilege by failing to timely assert them and by producing 51 personnel files
prior to making its claim that the personnel files are privileged.


 

 

 On January 7, 2003, the trial court held a hearing on Davis's motions. After the hearing, the
court overruled HP's assertion that the personnel files are privileged and ordered production,
within thirty days, of any additional personnel files. The court also ordered production of
the TILE documents, within thirty days, with all patient identification information redacted.


 

 

 On February 12, 2003, the trial court signed an order memorializing its rulings on Davis's
motions. It is this order that is the subject of Relators' mandamus petition.


 


Availability of Mandamus


 Mandamus issues only to correct a clear abuse of discretion or the violation of a duty
imposed by law when there is no adequate remedy by appeal. In re Daisy Mfg. Co., 17 S.W.3d 654,
658 (Tex. 2000) (orig. proceeding). A trial court clearly abuses its discretion if "it reaches a decision
so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992)(citing Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917
(Tex. 1985)). 

 Generally, privileged matters are not discoverable. West v. Solito, 563 S.W.2d 240, 243 (Tex
1978). If a trial court errs in ordering that privileged material must be disclosed, there is no adequate
remedy at law. Walker, 827 S.W.2d at 843. Remedy by appeal in that case is inadequate because,
once revealed, the documents cannot be protected. Id. 


Personnel Files


 At the hearing on Stanley's motion, HP contended that the personnel files are exempt from
discovery because the information contained in the files is protected by the medical peer review
committee privilege, the medical committee privilege, and the nursing peer review committee
privilege. In support of these assertions, HP submitted the affidavit of HP administrator Kyle
Bennett ("Bennett"), which is attached to HP's response to Stanley's motions. Bennett states in his
affidavit that Highland Pines utilizes a peer review process for the purpose of improving the quality
of medical and health care provided to its residents. Bennett asserts that the employee personnel
files contain peer review information and are therefore privileged from disclosure. Davis argued that
HP made its claim of privilege for the first time in its response to her motions and after it had
produced 51 files pursuant to her request for production. 

 The trial court found that HP had previously produced 51 personnel files and overruled HP's
objections to production. The court expressly ruled that any additional production would not violate
the medical peer review committee privilege and ordered that all additional personnel files, if any,
be produced within thirty days. However, the order authorized HP to withhold any medical records
contained in any of the additional personnel files and to submit for in camera review any other
information in the files that HP believes is privileged. 

 Relators contend that Bennett's affidavit is undisputed and therefore conclusively establishes
the applicability of the asserted privileges. Consequently, Relators conclude that the trial court
abused its discretion in ordering production of the files. Davis disagrees, contending that (1) the
medical peer review committee privilege does not apply and that (2) the medical committee privilege
and the nursing peer review committee privileges, even if applicable, have been waived. 

Privileges Asserted

 Medical Peer Review Committee Privilege

 Title 3 of the Texas Occupations Code includes provisions relating to the health professions,
and subtitle B, entitled "Physicians", comprises the Medical Practice Act. Tex. Occ. Code Ann.
§ 151.001-165.160 (Vernon Pamph. Supp. 2004). Subchapter A, Chapter 160 of the Occupations
Code relates to the medical peer review committee privilege. Tex. Occ. Code Ann.
§ 160.001-160.015 (Vernon Pamph. Supp. 2004). 

 A review of Chapter 160 reveals that every section specifically pertaining to application of
the medical peer review committee privilege shows that the privilege relates to reviews of
physicians. See Tex. Occ. Code Ann. §§ 160.002 (reports of medical peer review committees that
adversely affect clinical privileges of physicians or their membership in professional associations),
160.003 (reporting requirements when physicians pose continuing threat to public welfare), 160.004
(reports regarding impaired physicians) (Vernon Pamph. Supp. 2004). Furthermore, the portion of
the statute creating the privilege relates to physicians by its own terms. See § 160.007(d)
(disclosures to physician adversely affected by medical peer review committee action not a waiver
of confidentiality requirements) (Vernon Pamph. Supp. 2004). Finally, Subtitle B does not apply
to "a registered nurse or licensed vocational nurse engaged strictly in the practice of nursing in
accordance with the applicable licensing acts and other laws of this state" Tex. Occ. Code Ann.
§ 151.052(a)(4) (Vernon Pamph. Supp. 2004). The plain language of the relevant statutes establishes
that this privilege does not apply to the personnel files requested by Davis. See Memorial Hosp.- 
Woodlands v. McCown, 927 S.W.2d 1, 4 (Tex. 1996) (orig. proceeding) (court must seek legislative
intent of unambiguous statute as found in plain and common meaning of words used). Therefore,
the trial court did not abuse its discretion in ruling that further production of personnel files would
not violate the medical peer review privilege.

 Medical Committee and Nursing Peer Review Committee Privileges

 The records and proceedings of a medical committee are confidential and are not subject to
court subpoena. Tex. Health & Safety Code Ann. § 161.032(a) (Vernon Supp. 2004). Similarly, 
a nursing peer review committee proceeding is confidential, and any communication made to a
nursing peer review committee is privileged. Tex. Occ. Code Ann. § 303.006(a) (Vernon Pamph.
Supp. 2004). However, we need not decide whether either of these privileges protects the personnel
files from disclosure. Based upon our review of the record, we conclude that even if both privileges
apply, they have been waived.

 The burden of proof to protect information sought in discovery is on the party refusing
disclosure. Tex. R. Civ. P. 193.4(a); Tex. R. Civ. P. 193 cmt. 6 (1999). Moreover, where a party
seeking disclosure claims waiver of a privilege, the person or entity claiming the privilege has the
burden of showing that waiver did not occur. Giffin v. Smith, 688 S.W.2d 112, 114 (Tex. 1985)
(orig. proceeding). HP did not make any assertion of privilege until it responded to Stanley's motion
on November 22, 2002, which was 22 months after the request for production was served. Davis
raised the issue of waiver in her amended motions and again at the hearing on the motions. 
Additionally, the trial judge informed HP that "[t]here may be confidential information in the
personnel file that would not be subject to discovery under the privacy right of those individuals, but
I don't think you can keep the files given that you have produced 51 already." However, HP did not
provide any argument or authority that addressed the issue of waiver. 

 The trial court's order includes a finding that "[HP has] already produced personnel files
from 51 employees", which we construe as an implicit finding of waiver. The record before us
establishes that HP did not meet its burden to show the absence of waiver. See id. Therefore, the
trial court did not abuse its discretion in ordering the production of any remaining personnel files. 


TILE Documents


 Relators contend that the trial court abused its discretion in ordering production of redacted
TILE documents instead of denying Davis's motion to compel production. In support of its
argument, Relators call our attention to the finding in the trial court's order that "the physician
patient privilege can be maintained if the TILE records are produced with patient identification
information redacted." Arguing that this constitutes at least an implicit finding that the physician-patient privilege applies, Relators cite In re Columbia Valley Regional Medical Center, 41 S.W.3d
797 (Tex. App.-Corpus Christi 2001, orig. proceeding) and maintain that once the physician-patient
privilege is determined to apply, the entire document is privileged. Id. at 801. In other words,
redaction does not defeat the application of the privilege. Id. at 802. 

 The burden of proof to protect information sought in discovery is on the party refusing
disclosure. Tex. R. Civ. P. 193.4(a); Tex. R. Civ. P. 193 cmt. 6 (1999). Davis responds that HP did
not meet its burden to show that the physician-patient privilege applies to the TILE documents and
therefore the trial court did not abuse its discretion in ordering the production of redacted documents. 
Relators counter that Davis "did not contest the applicability of the physician-patient privilege in the
court below, but merely argued that patient identification information could be redacted." Therefore,
Relators conclude that Davis cannot now argue that the privilege does not apply. See In re Steger
Energy Corp., No. 04-01-00556-CV, 04-01-00670-CV, 2002 WL 663645, at *4 (Tex. App.-San
Antonio April 24, 2002, orig. proceeding) (not designated for publication) (appellate court declined
to address issue not argued before trial court); Kavanaugh v. Perkins, 838 S.W.2d 616, 620 (Tex.
App.-Dallas 1992, orig. proceeding) (privilege raised for first time in petition for writ of mandamus
is waived). Therefore, prior to considering the merits of the parties' contentions, we examine Davis's
arguments in the trial court.


The Hearing

 As previously stated, the hearing was held to address Davis's first amended motion for
contempt and sanctions, which included a motion to compel. At the outset, the judge asked if the
parties had talked and narrowed the scope of the hearing. Davis's counsel responded, "I think we
have, Judge. In all honesty though, there are still some issues that we definitely need the Court to
consider." He further stated that there were "probably six or seven, maybe eight different areas" to
be addressed at the hearing and suggested that "[m]aybe for the purposes of keeping it organized we
might want to talk about each area as we go or talk about an area that we haven't responded to."

 As the hearing progressed, Davis's counsel presented each area of disagreement, and HP's
counsel was given the opportunity to respond. The discoverability of the TILE documents was one
of the topics addressed, and Davis's counsel stated unequivocally that Davis is entitled to production
of the documents. Moreover, HP's counsel, in his argument at the hearing, identified "the issue on
these TILE records [as] one of physician/patient privilege." Based upon our review of the record,
we conclude that counsel for the parties identified the applicability of the physician-patient privilege
to the TILE documents as a contested issue. Therefore, Davis is entitled to argue in her response that
HP did not establish that the TILE documents are protected by the physician-patient privilege. We
now turn to the issue before us.

Physician-Patient Privilege

 Rule 509 of the Texas Rules of Evidence prohibits the disclosure of (1) confidential
communications between a physician and a patient relating to any professional services rendered by
a physician to the patient and (2) records of the identity, diagnosis, evaluation, or treatment of a
patient by a physician that are created or maintained by a physician are confidential and privileged
and may not be disclosed. Tex. R. Evid. 509(c). The privilege may be claimed by the patient, a
representative of the patient acting on the patient's behalf, or the physician acting on behalf of the
patient. Tex. R. Evid. 509(b). A similar provision is found in the Texas Occupations Code. See
Tex. Occ. Code Ann. § 159.002 (Vernon Pamphlet Supp. 2004). 

 To support its privilege claim, HP submitted Bennett's affidavit in which he stated that "[t]he
Texas Level of Effort (TILE) records contain patient identification information. The production of
them, even in redacted form, could waive the physician-patient privilege. Highland Pines strives to
maintain the physician-patient privilege applicable to its residents at all times." HP did not present
a description of what information, other than patient identity, is included in the TILE documents. 
HP also failed to introduce any evidence that the documents sought contain confidential
communications between patient and physician or that the records are maintained by a physician. 
See In re Fort Worth Children's Hosp., 100 S.W.3d 582, 589 (Tex. App.-Fort Worth 2003, orig.
proceeding) (did not show face sheets sought were created or maintained by physicians and therefore
did not show applicability of physician-patient privilege). Therefore, HP did not meet its burden to
show that the TILE documents fall within the ambit of the physician-patient privilege. Furthermore,
HP does not fall within any category of persons entitled to assert the privilege. Tex. Occ. Code
Ann. § 159.002(e) (Vernon Pamphlet Supp. 2004); Tex. R. Evid. 509(b). Consequently, the trial
court did not abuse its discretion in ordering the production of TILE documents with patient
identification information redacted.

Other Privileges Asserted

 HP also argues that the disclosure of the TILE documents is prohibited by Tex. Hum. Res.
Code Ann. § 102.003(j), 40 Tex. Admin. Code § 19.407 (adopted pursuant to Tex. Health &
Safety Code Ann. § 242.501(a)(7)), the Health Insurance Portability and Accountability Act of
1996, Pub. L. 104-191, 110 Stat. 1936 (1996) ("HIPPAA"), and the right to privacy implicitly
guaranteed by the Texas and United States Constitutions. However, HP did not make these
arguments in the trial court and therefore cannot make them in this proceeding. See Steger Energy
Corp., 2002 WL 663645, at *4 (Tex. App.-San Antonio April 24, 2002, orig. proceeding);
Kavanaugh, 838 S.W.2d at 620. 

Conclusion


 Based upon our review of the record, the materials submitted by the parties, and applicable
law, we hold that the trial court did not abuse its discretion in granting Davis's motion to compel
production of the personnel files and TILE documents as more particularly described in Davis's
requests for production. We therefore deny Relators' petition for writ of mandamus and lift the stay
imposed by our order dated February 19, 2003.

 DIANE DeVASTO 

 Justice


Opinion delivered November 13, 2003.

Panel consisted of Worthen, C.J. and DeVasto, J.

Griffith, J., not participating.



(PUBLISH)
1. The parties refer to the documents relating to patient levels of care as "TILE documents." These documents
summarize information submitted to the Texas Department of Human Services for purposes of obtaining Medicare and
Medicaid reimbursement. See generally 1 Tex. Admin. Code § 355.307 (West, WESTLAW through September 30,
2003) (Tex. Health & Human Svcs., Reimbursement Setting Methodology). "TILE" is an acronym for "Texas Index
for Level of Effort", which is an index of categories by which the reimbursement rate for a nursing facility client is
determined based upon service and care requirements. 40 Tex. Admin. Code § 19.101(145) (West, WESTLAW through
September 30, 2003 (Tex. Dep't of Human Svcs., Definitions).
2. The record does not contain this response.